1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

YUSSUF ABDULLE,

CASE NO. C19-37 MJP

11

Petitioner,

ORDER

12

v.

1. PARTIALLY ADOPTING
   REPORT AND
   RECOMMENDATION
2. ISSUING CERTIFICATE OF
   APPEALABILITY

13

JEFFREY A UTTECHT,

14

Respondent.

15

16

The above-entitled Court, having received and reviewed:

17

    1.  Report and Recommendation (Dkt. No. 25),

18

    2.  Petitioner's Objections to Report and Recommendation (Dkt. No. 26),

19

all attached declarations and exhibits, and relevant portions of the record (including the State

20

Court Record; Dkt. No. 19), rules as follows:

21

    IT IS ORDERED that the recommendation of the Magistrate Judge is PARTIALLY

22

ADOPTED, with modifications; the amended habeas petition is DENIED.

23

    IT IS FURTHER ORDERED that a Certificate of Appealability is GRANTED.

24

ORDER - 1

1                                           **Background**

2    Factual history

3          Petitioner's amended habeas petition ("AHP") presents a single ground for relief: "There

4    was insufficient properly admitted evidence of [his] guilt, in part due to ineffective assistance of

5    counsel."  Dkt. No. 13, AHP at 8.

6          Some of the facts relevant to Petitioner's AHP can be ascertained from the Washington

7    Court of Appeals decision in his state court proceedings.  State of Washington v. Adbulle, No.

8    72700-1-I (Div. 1); Dkt. No. 19-1, App. B.  At the age of 16, a young prostitute named "BI"

9    moved in with Petitioner, and shortly thereafter convinced him to allow another under-age friend

10   also involved in prostitution ("AP") to move in.  Id. at 279-80.  Petitioner became AP's pimp and

11   his petition does not challenge the part of his conviction arising out of his relationship with AP.

12         AP's mother contacted the police after learning of her daughter's activities and

13   Petitioner's involvement in them.  In the course of the police investigation, a detective named

14   Washington learned of BI's identity and eventually her whereabouts.  Detective Washington

15   contacted BI.  "She corroborated many of the details AP had provided" him, identified

16   Petitioner's apartment and his vehicles, and identified Petitioner in a photo montage.  Id. at 280-

17   81.

18         Additionally, "BI claimed she worked independently, arranged her own dates, kept her

19   earnings, and never paid rent to [Petitioner].  [Petitioner] did provide BI with transportation to

20   and from dates 'one or two times.'"  Id. at 280.

21         All the facts above are drawn from the state court of appeals opinion denying Petitioner's

22   appeal from his conviction for two counts of promoting commercial sexual abuse of a minor.

23   But it is the facts which are *not* reflected in the appellate opinion (because they were not raised

24

ISSUING CERTIFICATE OF APPEALABILITY - 2

1 by Petitioner until his amended habeas petition in this court) which are most relevant to these

2 proceedings.

3      During the trial, BI testified on direct examination[1] that Petitioner did not set up any

4 "dates" for her and that he only gave her one phone number and said she should call it and "see

5 what goes." Dkt. No. 19-1, Ex. 20, BI Transcript at 423, 425.   She also testified that she never

6 gave him any money from her meeting with the one person whose phone number he gave her,

7 nor did she give him any money for staying at his apartment.   Id. at 429-30.

8      At that point in the direct examination, the prosecutor sought to refresh BI's recollection

9 with a transcript of her conversations with Detective Washington.  Id. at 442.  Defense counsel

10 objected on the grounds that BI should be advised of her Fifth Amendment rights or appointed

11 counsel on self-incrimination grounds (an objection which was overruled; Id. at 443-51), but did

12 not object that the testimony was only admissible for impeachment/refreshment of recollection

13 purposes nor request a limiting instruction that the jury should not consider the contents of the

14 Detective Washington interviews as substantive evidence of any crime.

15      The testimony admitted through questioning related to BI's conversations with Detective

16 Washington included the following:

17   (1) That BI had told Detective Washington that she had arranged four to five dates through

18      Petitioner;

19   (2) That BI had given Petitioner a cell phone which he had sold for $100;

20   (3) That BI had given Petitioner an additional $100 in cash for "gas money and stuff," at

21      least some of which was money she had earned prostituting;

22   (4) That Petitioner had driven her to some of her "dates," but had left after dropping her off.

23

---

[1] The transcript of BI's trial testimony is found in the State Record (Dkt. No. 19-1, Ex. 20), beginning at p. 395.

24

ISSUING CERTIFICATE OF APPEALABILITY - 3

1 | Id. at 452-57.

2 | Procedural history

3 |     The state procedural history is relevant to Petitioner's AHP only as it is foundationally

4 | required for his federal petition and sets the timeline against which his timeliness in this forum is

5 | measured.  Petitioner did appeal his conviction to the Washington Court of Appeals, assigning as

6 | error (1) the admission of expert testimony on the subject of prostitution and (2) the

7 | inadmissibility of testimony related to the contents of several cell phones for failure to establish

8 | the reliability of the method used to extract the data.  Dkt. No. 19-1, Ex. 3 at i.  The Court of

9 | Appeals affirmed the conviction on April 25, 2016 (Id., Ex. 2), and denied the motion for

10 | reconsideration on June 10, 2016.  Id., Ex. 7.  On November 2, 2016, the state Supreme Court

11 | denied review without comment (Id., Ex. 9), and the Court of Appeals issued its mandate on

12 | December 9, 2016.  Id., Ex. 10.

13 |     Petitioner filed a personal restraint petition *pro se* on April 4, 2017, citing as grounds for

14 | relief (1) his attorney's failure to object to the introduction of evidence gathered from a

15 | warrantless search of a cell phone and (2) the insufficiency of the evidence that he contributed to

16 | the sexual abuse of BI.  Id., Ex. 11.  The Court of Appeals dismissed the petition on November

17 | 21, 2017.  Id., Ex. 14.  His petition for discretionary review was denied without comment by the

18 | state Supreme Court (Id., Ex. 16), and the Court of Appeals issued a certificate of finality on

19 | August 24, 2018.  Id., Ex. 17.

20 | **Discussion**

21 | Statute of limitations/exhaustion

22 |     The R&R contains a lengthy and thorough analysis of  both the timeliness of Petitioner's

23 | AHP and the issue of whether his failure to raise the ineffective assistance of counsel ("IAC")

24 |

1   issue in the state courts results in a procedural default of that claim in this forum.  The Magistrate

2   Judge recommended findings that (1) the AHP is timely filed (by virtue of relating back to the

3   original, timely-filed petition) and (2) the procedural default is excused under federal case law

4   establishing grounds for excusing such a default where the issue is "substantial" and Petitioner

5   was unrepresented in the state court appeal.  Martinez v. Ryan, 566 U.S. 1, 17 (2012).

6        Neither Petitioner nor Respondent filed any objections to the Magistrate Judge's analysis

7   or recommendations concerning timeliness nor the excusing of any procedural default pursuant

8   to Martinez.  Dkt. No. 25, R&R at 8-18.  This Court incorporates that analysis by reference and

9   adopts the recommendation: Petitioner's AHP is found to be timely, and any procedural default

10  represented by Petitioner's raising of the IAC issue for the first time in federal court is excused

11  under Martinez.

12  IAC Claim

13       Having found that the IAC claim is a "substantial" one and any procedural default is

14  excused under Martinez, Petitioner's allegations of IAC become a federally reviewable claim not

15  adjudicated on the merits in state court and therefore reviewed *de novo* by this Court.

16  Runningeagle v. Ryan, 825 F.3d 970, 978 (9th Cir. 2016); Dickens v. Ryan, 740 F.3d 1302, 1321

17  (9th Cir. 2014)(en banc).

18       The Court analyzes Petitioner's IAC claim under the framework set out in Strickland v.

19  Washington, 466 U.S. 668, 689 (1984).  Petitioner is required to establish (1) that counsel's

20  performance fell below an objective standard of reasonableness and (2) that Petitioner was

21  prejudiced by that deficiency.

22       The Magistrate Judge, undertaking a similar Strickland analysis, concluded that (1) trial

23  counsel's performance was not deficient (R&R at 28) and (2) even if it was, Petitioner was not

24

1   prejudiced by that deficiency (i.e., even absent the errors there was enough evidence to convict

2   Petitioner).  Id. at 32.  While this Court does not adopt the first finding, it does concur with Judge

3   Tsuchida that, even without the testimony that was admitted regarding BI's conversations with

4   Detective Washington, there was enough evidence adduced that a reasonable factfinder could

5   have found beyond a reasonable doubt that Petitioner was guilty of promoting the commercial

6   sexual abuse of a minor as regards BI.

7           *Deficient performance*

8           The R&R focuses primarily on whether it would have been futile for Petitioner's trial

9   counsel to object to the use of BI's prior conversations with Detective Washington for the

10  purposes of either impeaching her or refreshing her recollection.  Failure to object to testimony

11  on hearsay grounds is not IAC where the objection would have been properly overruled.

12  Matylinksy v. Budge, 577 F.3d 1083, 1094 (9th Cir. 2009), *cert. denied*, 588 U.S. 1154 (2010);

13  Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996).

14          Petitioner asserts (and this Court concurs) that the issue of futility is not determinative of

15  whether trial counsel's performance was deficient.  The prosecutor certainly had the right to use

16  the out of court statements to impeach or refresh his witness, and an objection to that avenue of

17  inquiry on purely hearsay grounds would have been properly overruled.  What defense counsel

18  would have been entitled to – and failed to request – was a limiting instruction regarding the

19  proper use of that evidence.  While it is true that an attorney's tactical trial decisions, however

20  questionable, are not *per se* IAC, the failure here to request an instruction that the jury was not to

21  consider these hearsay statements to be substantive evidence of a crime cannot credibly be

22  viewed as a strategic choice (as opposed to an oversight amounting to IAC).

23

24

1         The R&R rightly points out that "a decision not to request a limiting instruction could be

2 a reasonable trial strategy because trial counsel did not want to draw the jury's attention to BI's

3 inconsistent statements" (R&R at 26; *citations omitted*).  However, a declaration from defense

4 trial counsel indicated that (1) he could have made the objection and request outside the presence

5 of the jury and (2) "[his] approach in this trial had generally been to try to limit the State's case,

6 even where that required objections in the jury's presence or an instruction to the jury from the

7 Court about disregarding or limiting the consideration of testimony."  Dkt. No. 13-4, Ex. D,

8 Decl. of Peale.  In other words, his failure to request a limiting instruction was not strategic.

9         Given that the inculpatory evidence from BI up to that point had been relatively minimal

10 (though not inconsequential; *see* "Prejudice" analysis *infra*), the evidence adduced regarding the

11 Detective Washington interviews was extremely damaging to the defense case.  Furthermore, a

12 review of BI's testimony over the course of the direct, cross, and re-direct examination makes it

13 clear that defense counsel's failure to object and seek a limiting instruction regarding the

14 information from the Detective Washington interviews allowed the prosecution to treat the

15 introduction of BI's responses to Detective Washington as her substantive testimony.  Defense

16 counsel was then forced to cross-examine BI on that same basis; i.e., as though what she had told

17 Detective Washington was now her testimony as to what actually happened.  The failure to

18 request a limiting instruction that the out-of-court hearsay was not be viewed as direct evidence

19 of a crime lead to the treatment of the statements from the police interviews as substantive facts;

20 facts which lent added weight to the state's allegation that Petitioner had promoted the

21 commercial sexual abuse of BI.

22

23

24

1    Given that there was no strategic value to defense counsel's failure to request a limiting

2    instruction, this Court has no choice but to adjudge the oversight as falling "below an objective

3    standard of reasonableness."

4    *Prejudice*

5    The gravamen of a finding of prejudice in an IAC claim requires the Court to determine

6    "whether there is a reasonable probability that, absent the errors [by counsel], the factfinder

7    would have had a reasonable doubt respecting guilt." Strickland, 466 U.S. at 695.  A reasonable

8    probability is "sufficient to undermine confidence in the outcome" and must be substantial, not

9    conceivable. Id. at 693-94.

10    The statute under which Petitioner was charged provided, in relevant part:

11    (1)  A person is guilty of promoting commercial sexual abuse of a minor if
          he or she knowingly advances commercial sexual abuse or a sexually
12        explicit act of a minor or profits from a minor engaged in sexual
          conduct or a sexually explicit act.
13

14    RCW 9.68A.101(1).

15    Withdrawing all the evidence introduced by the questions concerning BI's interviews

16    with Detective Washington (which includes testimony regarding "four to five dates" set up by

17    Petitioner, Petitioner driving her to "one or two" dates, and a cell phone and cash which she gave

18    to him "for gas money and stuff"), the Court finds that there are still sufficient facts upon which

19    to conclude that there is not a reasonable probability that a factfinder would have had a

20    reasonable doubt regarding Petitioner's guilt of the offense with which he was charged in regards

21    to BI.  BI's testimony on direct examination (prior to the introduction of the interviews with

22    Detective Washington) established:

23    1.  Petitioner knew that BI was earning money through prostitution (BI Transcript at 421-

24        22).

1      2. Petitioner had given her a phone number and told her "you should call this number and

2      see what goes" (Id. at 423); that BI understood that the point of calling that number was

3      "[t]o make some money, get some money… [l]ike get money from him to have sex with

4      him" (Id. at 424).[2]

5      Furthermore, the prosecutor was able to introduce evidence through the testimony of

6 Detective Washington regarding text messages from Petitioner to a "jug" (client) which referred

7 to a potential liaison who was turning 18 in July (and was "nice," "cute," and "will obey"). (Dkt.

8 No. 19-2, Ex. 24 at 696-98.) The evidence at trial had shown that BI was (a) born in July and (b)

9 told Petitioner that she was "almost 18" when she met him.[3] (Dkt. No. 19-1, Ex. 20 at 401, 421.)

10      In addition to the evidence above, the jury was also in possession of all the facts

11 introduced at trial regarding Petitioner's pimping of AP.  With that information, a reasonable

12 factfinder could easily have concluded that this was a man familiar with the sex trade and who

13 had, on other occasions, facilitated and profited from the sexual activities of underage females.

14      Finally, the Court is equally cognizant that, for purposes of conviction under RCW

15 9.68A.101(1),  it is immaterial whether Petitioner arranged one potential sexual liaison for this

16 underage girl or six, and equally immaterial whether he received any cash or other compensation

17 directly from such a liaison.  The statute criminalizes the knowing advancement of any sexually

18 explicit act of a minor; giving a known underage prostitute a phone number and telling her to call

19 it and "see what goes" falls well within the parameters of that offense.

20

21 [2] Petitioner argues that BI's testimony regarding "the point of calling that number" represented "her reason for calling that number, not her interpretation of what Mr. Abdulle intended."  Dkt. No. 26, Obj'ns at 8.  The Court considers this a tortured construction of that statement.  When the prosecutor asked BI "what was the point of calling a number you didn't know anything about?" and she responded "To make some money, to get some money… Like get money from him to have sex with him," the most rational explanation is that she was conveying both hers and Petitioner's understanding of what that conversation/invitation was about, as well as her reason for making the call.

22

23

24 [3] In fact, BI had lied about her age: she was 16 when she met Petitioner.  Id. at 421.

1    The Court finds, under these circumstances, that the deficient performance of trial

2    counsel did not prejudice Petitioner regarding his conviction on Count 2.  On that basis, his claim

3    of IAC, and thus his amended habeas petition, will be denied.

4        *Evidentiary hearing*

5        As the R&R states:

6        When a petitioner has established both cause and prejudice to excuse the
         procedural default of his claim, he no longer requires evidentiary
7        development to support establishing cause and prejudice under <u>Martinez</u>,
         but, he "is entitled to evidentiary development to litigate the merits of his
8        ineffective assistance of trial counsel claim, as he was precluded from such
         development because of his post-conviction counsel's ineffective
9        representation."

10

11   R&R at 19 (quoting <u>Ramirez v. Ryan</u>, 937 F.3d 1230, 1248 (9th Cir. 2019).

12       It is clear from Petitioner's briefing, however, that he only desired an evidentiary hearing

13   in the event the Court was not convinced that his trial counsel's performance was deficient.

14   Obj'ns at 6-7.  Having found trial counsel's fell below an objective standard of reasonableness,

15   the Court sees no need to grant an evidentiary hearing.

16   <u>Certificate of Appealability</u>

17       Rule 11(a) of the Rules governing Section 2254 Cases in the United States District Courts

18   requires that "[t]he district court must issue or deny a certificate of appealability when it enters a

19   final order adverse to the applicant."  Such a certificate may only issue where a petitioner has

20   made "a substantial showing of the denial of a constitutional right" (*see* 28 U.S.C. § 2253(c)(3)),

21   a standard which is met "by demonstrating the jurists of reason could disagree with the district

22   court's resolution of [petitioner's] constitutional claims or that jurists could conclude the issues

23   presented are adequate to deserve encouragement to proceed further." <u>Wilson-El v. Cockrell</u>, 537

24   U.S. 322, 327 (2003).

1    The R&R recommends the issuance of a certificate of appealability; this Court agrees.

2   While the issue of deficient performance is not a close one (and one decided in Petitioner's

3   favor), the issue of whether Petitioner was prejudiced by that deficiency is one upon which

4   reasonable jurists might disagree.  On that basis, the Court will grant a certificate of appealability

5   to Petitioner.

6                                              **Conclusion**

7    Petitioner's amended habeas petition is timely filed, and his procedural default in failing

8   to have raised this IAC issue in state court is excused under <u>Martinez</u>.  While his trial counsel's

9   performance fell below an objective standard of reasonableness, there is not a reasonable

10  probability that, absent that deficiency, a factfinder would have had a reasonable doubt as to

11  Petitioner's guilt on the second count of promoting the commercial sexual abuse of a minor (BI).

12  Petitioner's amended habeas petition, therefore, is denied.

13    Petitioner is granted a certificate of appealability should he choose to appeal this

14  determination.

15

16    The clerk is ordered to provide copies of this order to all counsel.

17    Dated April 29, 2020.

18

19                                          Marsha J. Pechman
                                            United States Senior District Judge
20

21

22

23

24